IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CAREY E. STRONACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:07CV646-HEH |
| | ) |
| VIRGINIA STATE UNIVERSITY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION
(Granting Defendants' Motion to Dismiss Count VII)

This is a Title VII retaliation suit. It is before the Court on Defendants Eddie N. Moore, Jr., W. Eric Thomas, Larry C. Brown, and Ralph C. Gatrone's ("Defendants") Motion to Dismiss Count VII: Academic Freedom, filed on November 15, 2007. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process at this stage. For the reasons stated herein, the Court will grant Defendants' Motion to Dismiss Count VII pursuant to Fed. R. Civ. Proc. 12(b)(6).

I. Background

Plaintiff Carey E. Stronach is a Caucasian physics professor at Virginia State University ("VSU"). He has been a tenured faculty member at VSU for over forty years. VSU is a state-funded institution located 30 miles outside the City of Richmond. Stronach filed his Amended Complaint against VSU, Eddie N. Moore (VSU President),

W. Eric Thomas (VSU Provost), Larry C. Brown (Dean of the VSU School of Engineering, Engineering Technology, Industrial Education and Technology), and Ralph C. Gatrone (Chairman of the Department of Chemistry and Physics) on November 9, 2007. The Amended Complaint contains nine counts, the bulk of which allege Stronach suffered discrimination based on his race and color in violation of Title VII and 42 U.S.C. § 1983, as well as retaliation for his testimony in another professor's race discrimination lawsuit in violation of Title VII. The sole subject of Defendants' motion to dismiss, however, is a claim contained in Count VII that Stronach's right to academic freedom as guaranteed by the First and Fourteenth Amendments was violated by Defendants.

Stronach taught a Physics 112-01 class at VSU during the Spring 2006 semester. The course's graded exercises consisted of five quizzes given throughout the semester. According to the Amended Complaint, a student's final grade for the semester was calculated by averaging the three highest numerical scores achieved by the student on the five quizzes. Stronach contends that one particular student, unnamed in the pleadings, received numerical grades of 16, 66, 89, 21, and 22. These scores were on a scale of 100. Averaging the three highest grades resulted in a grade of 59. That numerical grade corresponded to an "F," but Stronach says he mercifully bestowed a "D" on the student for the semester.

The student, who is likely unaware that his introductory physics grade is at the center of federal court litigation, apparently believed that he received a score of 95 on

two quizzes, instead of the scores of 16 and 21, which would have changed his grade to an "A." Stronach informed the student he was mistaken and took no further action. The student submitted faxed copies of the exams bearing scores of 95, but Stronach insists that the scores were doctored. At some point, the grade dispute was elevated to Gatrone who sided with the student and utilized his authority as chairman of the department to change the grade on file to an "A."

Stronach disagreed vehemently with Gatrone's decision and, though the exact procedures followed are unclear, the dispute made its way up the VSU chain-of-command from Gatrone, through Dean Brown, and ultimately to Provost Thomas, who ratified Gatrone's decision and left the student's grade as an "A". Stronach believes that the actions of Gatrone, Brown, and Thomas were part of an overarching scheme to retaliate against him for assisting a fellow faculty member prosecute a Title VII claim against VSU which resulted in a jury verdict of $1,000,000.

Stronach brings suit to have the grade changed back to a "D". Despite labeling the motivation for the grade change as retaliation, Stronach seeks redress through a theory of constitutionally protected academic freedom. According to the Amended Complaint, Stronach has a right to academic freedom that is guaranteed through the First and Fourteenth Amendments of the Constitution. Stronach believes that Defendants were acting under color of state law when they violated his right to academic freedom and that 42 U.S.C. § 1983 allows him to bring a civil action in this Court to vindicate his rights.

He seeks monetary damages to compensate him for anxiety, emotional distress, and humiliation suffered as a result of the grade dispute. He also seeks an order from this Court directing VSU to change the student's introductory physics grade from an "A" to a "D." Defendants seek dismissal of this claim pursuant to Fed. R. Civ. Proc. 12(b)(6).

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Generally, dismissals under Rule 12(b)(6) are disfavored by the courts because of their res judicata effect. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). A complaint need only have "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. In considering a motion to dismiss under Rule 12(b)(6), the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Martin*, 980 F.2d at 952.

## III. Analysis

Stronach claims that he enjoys the constitutional right to assign grades to his

students as he sees fit. He contends grading is protected activity under the the right to academic freedom contained in the First and Fourteenth Amendments. Stronach recognizes in his response to Defendants' motion though that whatever right to academic freedom exists in the Fourth Circuit, it has never been held to grant the type of protection he seeks. Stronach acknowledges in his brief that this is a case of first impression in this Circuit, and asks the Court to extend the constitutional right of academic freedom beyond its current coverage. Reviewing relevant case law reveals, however, that Stronach asks the Court not to extend an existing constitutional right, but to create one despite clear evidence from the Fourth Circuit and several others that Stronach's claim lies beyond the shadow of First Amendment protection.

The Supreme Court has recognized that because free societies require free universities, the Constitution provides some measure of academic freedom to academic institutions. *See Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957). The exact contours of the right delineated in *Sweezy* remain somewhat hazy, but the tenets of *Sweezy* most cited to date are the four essential freedoms of a university articulated by Justice Frankfurter in his concurring opinion. According to Justice Frankfurter, a university has the right "to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." *Id.* at 262-63.

However definite the university's right to academic freedom is after *Sweezy*, it is clear that it is the *university's* right and not the *professor's* right. In upholding a Virginia

5

law making it illegal for state employees to surf internet content of a sexual nature on state-owned computers against a challenge by public university professors, the Fourth Circuit noted that "cases that have referred to a First Amendment right of academic freedom have done so generally in terms of the institution, not the individual." *Urofsky v. Gilmore*, 216 F.3d 401, 414 (4th Cir. 2000).

*Urofsky* represents the Fourth Circuit's most thorough examination of the scope of constitutionally protected academic freedom. The Court concluded that beyond acknowledging that public employees, including teachers, do not forfeit their First Amendment rights when they accept public employment, "the [Supreme] Court has focused its discussions of academic freedom solely on issues of institutional autonomy." *Id.* at 415. "Significantly, the Court has never recognized that professors possess a First Amendment right of academic freedom to determine for themselves the content of their courses and scholarship, despite opportunities to do so." *Id.*

The majority of circuits that have undertaken an inquiry into the rights sought by Stronach have reached the same conclusion as the Fourth Circuit. The Seventh Circuit characterized a claim by a University of Illinois professor that he had a right to autonomy in grading his students, despite conflicts with established university grading procedures, as "frivolous." *Wozniak v. Conry*, 236 F.3d 888, 891 (7th Cir. 2001) ("No person has a fundamental right to teach undergraduate engineering classes without following the university's grading rules."). The court noted that in the area of grades, whatever right to

academic freedom existed was invested in the university, not the individual professor because "it is the [u]niversity's name, not [the professor]'s, that appears on the diploma; the [u]niversity, not [the professor], certifies to employers and graduate schools a student's successful completion of a course of study. Universities are entitled to assure themselves that their evaluation systems have been followed; otherwise their credentials are meaningless." *Id.*

The Third Circuit has also declined to extend First Amendment protection to individual professors in the manner requested by Stronach. In *Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488, 491 (3d Cir. 1998), the court held that the First Amendment does not allow a university professor to decide what is taught in the classroom but rather protects the university's right to select the curriculum. The court extended the *Edwards* rationale to cover grading procedures in *Brown v. Amenti*, 247 F.3d 69 (3d Cir. 2001), holding that "a public university professor does not have a First Amendment right to expression via the school's grade assignment procedures." *Id.* at 75. *Amenti* involved a grading dispute similar to the one between VSU and Stronach. The law of the First Circuit also weighs against Stronach. *See Lovelace v. S.E. Mass. Univ.*, 793 F.2d 419, 425 (1st Cir. 1986) ("To accept plaintiff's contention that an untenured teacher's grading policy is constitutionally protected . . . would be to constrict the university in defining and performing its educational mission.").

The only case that supports Stronach's position, albeit not convincingly, arises out

of the Sixth Circuit. That court held "a university professor may claim that his assignment of an examination grade or a final grade is communication protected by the First Amendment . . . [t]hus, the individual professor may not be compelled, by university officials, to change a grade that the professor previously assigned to her student." *Parate v. Isibor*, 868 F.2d 821, 827-28 (6th Cir. 1989). The Sixth Circuit sided with the professor in his grading dispute with a university, but the lynchpin of the holding was that the university compelled the professor to personally change the grade. The court reasoned that ordering the professor to change the grade constituted compelled speech and violated the professor's First Amendment rights. *Parate* is cited with fervor by Stronach, but that case does not reflect the law of this Circuit nor does it accurately mirror the facts surrounding Stronach's dispute. Stronach was not compelled to change the grade at issue himself. Ranking university officials utilized their authority to change the grade without any action on the part of Stronach. The Sixth Circuit's reasoning in *Parate* relied on coercion and hence would not apply in this case.

Given the state of the law in the Fourth Circuit and the decisions of other Circuits in similar cases, the Court finds that no constitutional right to academic freedom exists that would prohibit senior VSU officials from changing a grade given by Stronach to one of his physics students against his will. Even if all of the facts occurred as Stronach has alleged, he has failed to state a claim for which this Court could afford relief. Count VII will therefore be dismissed.

## IV. Conclusion

For the reasons stated above, Defendants' motion is granted. Count VII of Stronach's Amended Complaint will be dismissed pursuant to Rule 12(b)(6).

An appropriate Order will accompany this Memorandum Opinion.



/s/
Henry E. Hudson
United States District Judge

ENTERED this _15_ day of _Jan. 2008_
Richmond, VA