# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**CAREY E. STRONACH,**

> *Plaintiff*,

**v.**                                                        **CA No. 3:07cv646**

**VIRGINIA STATE UNIVERSITY,** *et al.*,

> *Defendants.*

## MEMORANDUM IN SUPPORT OF MOTIONS *IN LIMINE*

Defendants, Virginia State University (VSU), Eddie N. Moore, Jr. (Moore), W. Eric Thomas (Thomas), Larry C. Brown (Brown) and Ralph C. Gatrone (Gatrone) (collectively Defendants), by counsel, submit this Memorandum in Support of Defendants' Motions *in Limine*.

### Introduction

Pretrial rulings expedite the trial and eliminate the element of surprise and thus are favored by the commentators. *See Manual for Complex Litigation*, § 4.22; 22 Wright & Graham, Federal Practice and Procedure: Evidence, § 5224 at 320-21 (1978) (Wright and Graham). Discussing Federal Rules of Evidence, Rule 403 (Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time), Wright and Graham state that:

> Courts and commentators generally agree that any inquiry into preliminary facts in an invocation of discretionary exclusion should be heard out of the earshot of the jury. This suggests the desirability of a pretrial hearing where the issue is important and complex. The use of the motion in limine for this purpose should be encouraged.

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1141 (E.D. Pa. 1980), *modified sub nom. In re Japanese Elec. Prods. Antitrust Litig.* 723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 534 (1986).

Motions *in limine* serve a salutary purpose in the litigation process. *See e.g.*, *Gross v. Weingarten,* 217 F.3d 208 (4th Cir. 2000); *Harward v. Commonwealth,* 5 Va. App. 468, 474, 364 S.E.2d 511 (1988) (motions *in limine* "serve worthwhile functions of narrowing issues, preventing trial delay, avoiding expense, and promoting judicial efficiency").   A pretrial motion *in limine* may consider the viability of certain contested evidence to in fact support a cause of action. *See Mosco v. Baltimore & Ohio Railroad*, 817 F.2d 1088, 1092 (4th Cir. 1987).

Prejudicial evidence may be excluded based on Federal Rule of Evidence (F.R.E.) 403 that specifically states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence*." See Old Chief v. United States*, 519 U.S. 172, 177(1997).  "[U]nfair prejudice [would] suggest decision on an improper basis, commonly, though not necessarily an emotional one." *Id.* at 180.  *See also United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) (unfair prejudice is a genuine risk that the emotions of the jury will be excited to irrational behavior and that this risk is disproportionate to the probative value of the evidence.).

Only relevant evidence is admissible.  Specifically, F.R.E. 402 provides "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible." As defined by F.R.E. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable or less probable than it would

be without the evidence." *See also Huddleston v. United States*, 485 U.S. 681, 687 (1988)

(similar act relevant only if the jury can reasonably conclude that act occurred and the Defendant

was the actor.).

**Legal Argument**

The Defendants move to exclude the following evidence.  The evidence, by testimony or

exhibit, should not be mentioned by the parties in opening or closing statements, elicited from

witnesses or stated by witnesses in response to questions, admitted for jury consideration, or

otherwise become part of the trial record in this case.  An appropriate Order should be entered.

**1.     Exclude Mention of a Verbal Argument Between Stronach and Thomas at Thomas'
        Deposition**

Apparently, Stronach and Thomas had a heated exchange where Thomas called Stronach,

*inter alia*, an "a__hole" and "fat" on the morning of Thomas' deposition in this case, just this

month.  Stronach intends to illicit testimony regarding this incident, by personally testifying

and/or by having the court reporter who witnessed the exchange testify.  Such testimony should

be excluded as irrelevant as the two exchanged words at a deposition *years* after Stronach had

retired from VSU.  Nothing in the exchange makes the Complaint's allegations more probable or

supports any theory of Stronach's case.  Thomas' comments reveal that a Defendant was under

stress and unhappy to be embroiled in a lawsuit.[1]   Even if this evidence is deemed relevant

under F.R.E. 402, the exchange should be excluded under F.R.E. 403 because the probative

value of this evidence is far outweighed by the danger of unfair prejudice to Thomas and the

other Defendants.   Such information has no probative value.

---

[1] Thomas asked that counsel for Stronach "understand I'm not in good temperament here because someone has told a pack of lies and dragged me and some colleagues into court.  Now you think I'm supposed to be pleased about that?"  ( Thomas Depo. pp. 47-48.)

Analogously, in *Williams v. City of Kansas City,* 223 F.3d 749 (8th Cir. 2000)*,* a hostile work environment case, the Court held it was an abuse of discretion to admit evidence that the plaintiff's supervisor had made, among other things, a sexually explicit comment to a co-worker after the plaintiff had left the City's employ, so it was irrelevant to the plaintiff's state of mind in failing to use the City's internal grievance procedure and to whether the City had an effective sexual harassment policy in place while the plaintiff was employed.  Whatever probative value the evidence might have was outweighed by its inflammatory nature.  Here, any use of this argument between Stronach and Thomas is also irrelevant as this argument happened after Stronach left VSU's employment but during the pendency of the litigation.

Moreover, it does not tend to prove or disprove the fact that the Defendants discriminated against Stronach based on his race or that any of the Defendants retaliated against him because he assisted Saleh or Cobbs with their lawsuits.  Specifically, Stronach must demonstrate at trial a motive to discriminate and negative animus in 2005 and 2006 when Thomas made the disputed decisions.  A 2008 statement, more than six months into litigation, reflects animus that is just as likely to be a product of litigation itself.  This Court should not let a jury be confused between pre-litigation and post-litigation animus.   Bias between litigating parties, is inherent in the adversarial process.

Furthermore, court reporters, who perform an important function in the judicial process, should not, as a matter of public policy, be dragged into litigation as witnesses. Their function is to report accurately what is said in the deposition record.  The looming possibility of being compromised by witness status would diminish the task assigned and turn the umpire into an unwilling member of one team's line-up.

**2.      Exclude Mention of Any Sexual Harassment Lawsuit in Which Gatrone Was a Defendant**

At Gatrone's deposition, he testified that when he worked for Wilkes University in 1997, he was involved in a lawsuit alleging sexual harassment.  As a result of Gatrone's deposition testimony, Stronach produced a magazine article regarding the case against Gatrone that was written by the Plaintiff herself.  This court should exclude all references to that lawsuit as it is irrelevant under F.R.E. 402 because the facts of the lawsuit against Gatrone are not related to Stronach's.  The lawsuit was filed against Gatrone more than 10 years ago and long before he worked for VSU.  Sexual harassment (and in fact any gender bias) attributed by Gatrone is extraneous to the issues of this case.  Evidence designed solely to elicit an emotional response and embarrass Defendants should be excluded under F.R.E. 402.

In *Kinan v. Brockton*, 876 F.2d 1029 (1st Cir. 1989), the Court held, in a civil rights action for injuries received after being arrested as a result of an allegedly improper police broadcast, that evidence of two prior judgments against the defendants was properly excluded. The judgments were based on settlements rather than adjudications, and the prior claims involved excessive force rather than inaccurate police broadcasts, so their probative value on the adequacy of police training would be substantially outweighed by the risks of confusion and the consumption of much unnecessary time in essentially retrying two prior cases.   The same reasoning applies here.

Nor can this evidence be admissible as character evidence.  Under F.R.E. 404 (b), other crimes, wrongs, or acts are not admissible to prove the character of a person.  A court weighs the admissibility of F.R.E. 404 (b) evidence in a four part test.  The evidence must be 1) relevant to an issue such as an element of the case; 2) necessary as probative of an essential claim or element of the case; 3) reliable; and 4) admissible under F.R.E. 403 in that its prejudicial nature

does not substantially outweigh its probative value.  *United States v. Mohr*, 318 F.3d 613, 617 (4th Cir. 2003).   In this case, this evidence is not relevant to any element or essential claim of Stronach's case and it is not admissible under F.R.E. 403.

**3.      Exclude Testimony Regarding an Alleged "You People" Comment**

Stronach asserts that Thomas told at least one white professor that "we don't need you people here."  First, Stronach was not present, so the remark is hearsay under F.R.E. 801(c).  Second, under F.R.E. 402, the comment is irrelevant being vague and ambiguous absent context.  The jury will not learn when, how or why the comment was made.  With respect to F.R.E. 403, the comment, if deemed relevant, is more prejudicial than probative as the danger of unfair prejudice, confusion or misleading the jury far outweighs any possible or potential relevancy of the remark.  Such a comment could mean anything.

In *C & H Co. v. Richardson*, 78 Fed. Appx. 894, 905 (4th Cir. 2003) (unpublished case, a copy is attached for the convenience of the court), a constitutional case alleging retaliation, the Fourth Circuit refused to permit testimony regarding C & H's "speculative interpretation" of the Defendant's inaction to permit an "inference of intent."  For a jury to "adopt C & H's claim of discriminatory intent, it would have to engage in sheer speculation and conjecture," with no evidence from which an inference of intent could be drawn.  *Id*. at 905.   A comment made to a white professor about not wanting "you people here" does not necessarily mean "you white people."  (Any more than it might mean "you negatively thinking people.")   The jury would have to speculate so this comment should be excluded.

**4.      Exclude the Content of Stronach's Testimony in Other Lawsuits**

Assuming *arguendo* that Stronach, despite his failure to exhaust his administrative remedies, is permitted to rely on the facts that he provided testimony at trial or depositions in two

other cases against VSU, *Saleh* and *Cobbs*[2], and the actual content of his testimony should be excluded under F.R.E. 402 or in the alternative, F.R.E. 403.   Stronach claims that because he provided testimony or assistance on these two cases, that he was retaliated against by the Defendants.  Defendants concede he gave testimony for Saleh in 1999 and assisted Cobbs more recently.  Therefore, the content of his testimony is irrelevant.   Most of the Defendants in this lawsuit were not Defendants in the other two lawsuits---only VSU and Moore were Defendants in *Saleh* while Thomas was also a defendant in *Cobbs.*  Second, actual Stronach testimony from the other cases would create a confusion of the issues and the jury would be misled.  Such evidence must be excluded as its probative value is substantially outweighed by this danger.  The case issues were different.  A jury may decide this case based on the fact that VSU, sued by others, must be liable in this case.

Faigin v. Kelly, 184 F.3d 67 (1st Cir. 1999), was a defamation action by a former professional athlete who implied that his former agent had been dismissed for unlawful conduct. In a prior proceeding, regarding similar issues, a foreign court issued a sanctions order against Kelly; Faigin attempted to introduce it as evidence.  The Court used the balancing test for F.R.E. 403, concluding that a "lay jury is quite likely to give special weight to judicial findings merely because they are judicial findings." *Id*. at 80 (internal citations omitted).   The First Circuit affirmed.

Applying the balancing test for F.R.E. 403 to this case brings the same result.  The evidence would inflame and/or mislead the jury and create an unfair prejudice for the Defendants.

**5.     Exclude Past or Current "Victim" Plaintiffs From Testifying in This Matter as Their Testimony is Irrelevant and Unfairly Prejudicial**

---

[2] In addition and as will be addressed herein, Stronach admits to assisting other VSU professors with their lawsuits. Stronach should be prohibited from mentioning those lawsuits..

Stronach would have past and current lawsuits (not the decisions in the lawsuits, but the charges, complaints, allegations lodged and not proven) be admitted for the ostensible purpose of demonstrating "the routine practice of an organization."  F. R. E. 406.   Particularly, Stronach cites these allegations as examples of VSU's routine of allegedly retaliating against an array of dissident professors.  However, the Fourth Circuit urges vigilance.

> [H]abit or pattern of conduct is never lightly established, and evidence of examples, for purpose of establishing such habit, is to be carefully scrutinized before admission. The reason for such an attitude toward evidence of habit is the obvious danger of abuse in such evidence resulting from the confusion of issues, collateral inquiry, prejudice and the like, or the collateral nature of [such] proof, the danger that it may afford a basis for improper inferences, the likelihood that it may cause confusion or operate to unfairly prejudice the party against whom it is directed.  It is only when the examples offered to establish such pattern of conduct or habit are numerous enough to base an inference of systematic conduct and to establish one's regular response to a repeated specific situation or, where they are sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any of prejudice and confusion that they are admissible to establish pattern or habit.

*Wilson v. Volkswagen of Am.*, 561 F.2d 494, 511 (4th Cir. 1977) (internal quotations and citations omitted.).  Stronach proposes to share with the jury vastly different examples of circumstances and have the jury conclude that VSU has a culture of retaliation.  Such evidence should be excluded.

Employment law requires the "other" employee be in a demonstrably same employment situation.  *See e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992),  "to make a comparison of a discrimination [in] plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated in all respects.  Thus, to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that

would distinguish their conduct or the employer's treatment of them for it," *Id.* at 583; *Smith v. Stratus Computer*, 40 F.3d 11 (1st Cir. 1994) (plaintiff must be "similarly situated to those men in terms of performance, qualifications, and conduct, 'without such differentiating or mitigating circumstances that would distinguish' their situation," (citing *Toledo Hospital*)); and *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995) ("similarly situated in all relevant respects.").   *See also  Palmer v. Board of Regents of the Univ. Sys.*, 208 F.3d 969 (11th Cir. 2000), where the Court affirmed a judgment for the defendant in an employment discrimination action by a college professor who alleged that she had been denied a permanent appointment because she was Jewish.  The Court found no abuse of discretion in the exclusion of evidence of other suits filed against the defendant for discriminating against Jewish people, since they involved different decision-makers, different departments, and different hiring processes from the ones about which the plaintiff complained.  Stronach's claims, as noted above, are decidedly different from these other Plaintiffs.

Moreover, to permit their testimony or his testimony regarding these matters would be unfairly prejudicial.  In *Ramos-Melendez v. Valdejully*, 960 F.2d 4 (1st Cir. 1992), an employment civil rights case, the Court held there was no abuse of discretion in excluding testimony by the plaintiff's fellow employees, as they also had pending employment discrimination suits against the defendant and for their testimony to be significant it would be necessary in effect to try their cases as well as the plaintiff's.  Other VSU plaintiffs have had or will have their day in court.  To permit trial or retrial amid this case would be dangerously confusing.

**6.      Exclude Academics From Testifying in this Matter as Their Testimony is Irrelevant and Wholly Unnecessary and a Waste of Time**

Stronach would admit into evidence the consideration by the American Association of University Professors (AAUP) of the disputes brought by Cobbs and S. Olusoga, tenured faculty members placed in post-tenure review.  The AAUP, true to the wishes of its constituents, censured VSU for these actions.  Stronach, by contrast, was never placed in post-tenure review.  The instant lawsuit does not involve procedural due process for tenured faculty.  Therefore, AAUP's views, and its censure, are irrelevant to this case.  Censure by an official-sounding entity would prejudice VSU in the eyes of the jury.  Clearly, the probative value of what Gerald Burton, Robert Keiser, and others might have to say about the Cobbs and Olusoga matters is outweighed by the prejudice to the Defendants.  F.R.E. 403.

Another prospective witness is the author and scholar, Kenneth Westhues, a sociologist.  Westhues is not VSU faculty; Westhues has never taught at VSU.    Westhues has not been identified as an expert witness.  Westhues is an academic in Ontario, Canada, who has written a book about a phenomenon he calls "mobbing."   Westhues' publications include one entitled, *Mobbing in Academe: Reports from Twenty Universities*.  Westhues' proposed testimony is inflammatory.  Westhues or any other witness should be barred from speaking about Westhues and/or his work.  In particular, no witness should be permitted to use term, "mobbing," associated with gang violence, to describe any conduct at VSU.

7.     **Exclude Conclusory Testimony with Respect to Emotional Injury as Wholly Speculative**

Stronach did not identify any expert witnesses who will testify regarding any alleged emotional injury.  Instead, it appears as if Stronach will seek to testify regarding his own alleged injuries that are unsupported by any testimony from any health care provider.  Damages should not be awarded based on sympathy, speculation, or guesswork.  *See, e.g.,* C. O'Malley, Grenig

and Lee, <u>Federal Jury Practice and Instructions</u>, § 171.90 (5th Ed. 2000).  A plaintiff, such as

Stronach, seeking compensatory damages for emotional injuries cannot rely on "conclusory

statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional

violation of his rights occurred."  *Price v. City of Charlotte,* 93 F.3d 1241, 1254 (4th Cir. 1996).

To the contrary, "demonstrable emotional distress…must be sufficiently articulated."  *Id.  See*

*also Hetzel v. County of Prince William*, 89 F.3d 169 (4th Cir. 1996) (reversing a jury verdict due

to "insufficient evidence to place a high dollar value on plaintiff's emotional harm" and requiring

damages be "proportional to the actual injury incurred.") (internal citations omitted).

Stronach has had physical health issues such as diabetes and a heart condition long before

any of the allegations in this lawsuit.  No physician has linked, or will link (given the lack of

expert testimony to be permitted at trial) these medical conditions to the allegations in his

lawsuit.  At most, a doctor has indicated that Stronach reported he was experiencing stress at

work.  Emotional distress is commonplace in the workplace and has numerous possible triggers.

Stronach should not be able to suggest to the jury that he deserves compensation from

Defendants for his emotional distress.

**8.     Exclude Witness Testimony, Lay or Medical, From Speaking of the "Cause and Effect" Without a Proper Foundation**

No witness, lay or medical, should be permitted to testify regarding the "cause and

effect" of Stronach's medical conditions without a proper foundation.   Specifically, unless the

foundation is laid by contemporaneous treatment that brought the physician to that conclusion,

such testimony cannot be admitted.   As this court has already ruled, "medical opinions based on

factors not learned in the course of treatment" are prohibited.  Stronach's physicians, Leming or

Kohli, and/or Stronach should not be allowed to draw conclusions as to the "cause and effect" of

Stronach's medical condition based only upon the patient's suspicions, sentiments, predictions, or his belief.  In *King v. Rumsfeld,* 328 F.3d 145, 153 (4th Cir. 2003), an employment case, the Court required "an expert to form an opinion based on reasoned analysis" before the Plaintiff went forward with anecdotal evidence of disparate treatment of his fellow employees.  No witness has identified the source of the stress.  Witnesses should not be permitted to blurt out the untrained belief in "stress caused by discrimination and retaliation by the Defendants."  Unsubstantiated, anecdotal evidence that Defendants' acts caused the stress should not be permitted.

**9.     Exclude Writings Authored By the Late Dr. M. Hadi Moadab**

Stronach should not be allowed to use any documents authored by M. Hadi Moadab (Moadab), now deceased.  Such documents lack proper authentication under F.R.E. 901, are hearsay, and are not saved by the residual hearsay exception, F.R.E. 807.  Moadab was the Dean of the School of Engineering, Science and Technology (School) throughout much of the time in which Stronach complains of discriminatory and retaliatory treatment.  Since Moadab is unavailable to authenticate any of his writings, any document authored by him should not be admitted into evidence.   No foundation is available as to whether such writings are drafts or finals, were distributed or were not distributed.

In addition, Moadab's writings are inadmissible hearsay and are not more probative on the point for which they are offered than any other evidence Stronach could obtain through other efforts.  F.R.E. 807.  The Fourth Circuit is reluctant to apply the residual hearsay exception when more solid evidence is available.  *United States v. Heyward*, 729 F.2d 297, 299 (4th Cir. 1984).  *See also*, *United States v. Kim*, 595 F.2d 755, 766 (D.C. Cir. 1979); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F. Supp. 1190, 164-65 (E.D. Pa. 1980).

10.     **Exclude Stronach's Distorted Notions of "Free Speech".**

Nothing that Stronach communicated is protected by "academic freedom."     *See*

Memorandum Opinion, January 15, 2008.   What Stronach wrote to Thomas was not protected

speech (e.g., his email of April 8, 2004, rejected by Thomas as unwanted).   Nor were his

comments to Danielle Morel, the prospective faculty candidate.

"The determination of whether government conduct…has a chilling effect or an adverse

impact [on speech] is an objective one – we determine whether a similarly situated person of

'ordinary firmness' reasonably would be chilled by the government conduct in light of the

circumstances."  *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006).   A Governor may

refuse to answer questions from reporters he considers a nuisance without abridging their

constitutional rights.   Those reporters have alternate means of communication with the world.

*Id.*  Thomas need not *listen* to what Stronach has to say about politics, academics, or society.

Even if Thomas has unpleasant thoughts about Stronach, "a public official's malicious intent,

taken alone, cannot amount to a retaliatory response."  *Id.*  at 420.

Stronach claims his statements to Morel were "free speech."   Stronach would testify "I

told her that VSU was being censured…she should consider carefully whether she wanted to be

part of an institution where faculty rights are held in low esteem."  (Stronach Depo. p. 68).

Stronach, chair of the selection committee, made inappropriate comments in private to

Morel, the committee's choice to become faculty in VSU's Department of Chemistry and

Physics.  Acting **for** VSU, in a position of trust, it was improper for Stronach to undermine the

Committee's work by badmouthing VSU and discouraging Morel from accepting the position.

Stronach undercut the committee, the Chair, the Department, and VSU, without considering the

committee's views or any consequence of his actions.  For his behavior, the First Amendment affords him no protection.

Free expression must be balanced against the legitimate needs of the public employer to function and carry forward with its mission; the university need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action."  *Connick v. Myers*, 461 U.S. 138, 152 (1983).   The faculty member with an assignment to accomplish his university's task does not have the freedom to take the university's salary while frustrating the university's mission by bad-mouthing his supervisors.  *Id.*

The Court should instruct Stronach not to make assertions or assessments on the witness stand about the First Amendment.  He did so in discovery proceedings and the danger is real and prejudicial.

## Conclusion

For the reasons asserted above, Defendants respectfully request that its motion be granted.

Respectfully submitted,

**VIRGINIA STATE UNIVERSITY,
EDDIE N. MOORE, JR., W. ERIC THOMAS,
RALPH C. GATRONE, AND LARRY C.
BROWN**


By _____/s/_____
          Counsel for Defendants
Sydney E. Rab
Virginia Bar Number 15105
Teri Craig Miles
Virginia Bar Number 27252
Senior Assistants Attorney General
Counsel for the Defendants

Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-1109 (Rab)
(804)  371-0817 (Miles)
Fax: (804) 371-2087
Email: SRab@oag.state.va.us;
tmiles@oag.state.va.us

Robert F. McDonnell
Attorney General of Virginia

Maureen Riley Matsen
Deputy Attorney General

Peter R. Messitt
Senior Assistant Attorney General/Chief

Sydney E. Rab
Senior Assistant Attorney General
State Bar No. 15105

Teri Craig. Miles
Senior Assistant Attorney General
State Bar No. 27252

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April 2008, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Richard F. Hawkins, III
Virginia Bar Number 40666
The Hawkins Law Firm, PC
One East Cary Street, Suite 201
Richmond, VA 23219
Phone: (804) 228-4900
Fax: (804) 644-6553
E-mail: rhawkins@thehawkinslawfirm.net

_____/s/_____
Sydney E. Rab
Virginia Bar Number 15105
Teri Craig Miles
Virginia Bar Number 27252
Senior Assistants Attorney General
Counsel for the Defendants
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-1109 (Rab)
(804)  371-0817 (Miles)
Fax: (804) 371-2087
Email:SRab@oag.state.va.us;
tmiles@oag.state.va.us