## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| CAREY E. STRONACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:07CV646-HEH |
| | ) |
| VIRGINIA STATE UNIVERSITY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
### (Granting Defendants' Motion for Summary Judgment)

This is a discrimination and retaliation action brought pursuant to Title VII and 42

U.S.C. § 1983. It is before the Court on Defendants Virginia State University ("VSU"),

Eddie N. Moore, Jr., W. Eric Thomas, Larry C. Brown, and Ralph C. Gatrone's

("Defendants") Motion for Summary Judgment, filed on April 1, 2008. The Court will

dispense with oral argument because the facts and legal contentions are adequately

presented in the materials before the Court, and argument would not aid in the decisional

process at this stage. For the reasons stated herein, the Court will grant Defendants'

Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

### I. Background

VSU is a historically black university funded by the Commonwealth of Virginia

and located 30 miles outside the City of Richmond. Plaintiff Carey E. Stronach is a

Caucasian physicist and was a tenured professor at VSU for 40 years until he retired in

2006. Stronach filed his Amended Complaint against VSU, Eddie N. Moore (VSU President), W. Eric Thomas (VSU Provost), Larry C. Brown (Dean of the VSU School of Engineering, Engineering Technology, Industrial Education and Technology), and Ralph C. Gatrone (Chairman of the Department of Chemistry and Physics) on November 9, 2007.

The gist of the Amended Complaint is that Defendants took a series of actions against Stronach designed to force his retirement. Stronach's race, color, and his assistance to VSU Professors Saleh and Cobbs in their prior discrimination disputes with the university[1] allegedly motivated university officials to drive Stronach to resign. The professor claims four principal actions taken by Defendants were engendered by discriminatory or retaliatory animus and effectively led to what Stronach calls his "premature retirement": 1) VSU's cancellation of Stronach's $300,000 Air Force grant which would have provided him with three years of funding for his salary and research; 2) overloading Stronach with an increased teaching load; 3) siding with a student in a grading dispute; and 4) shutting off Stronach's email while he was still employed at VSU.

Stronach has converted these four actions into nine separate claims for relief. Stronach alleges the actions described constitute race and color discrimination and retaliation by VSU in violation of Title VII. (Counts I, III, V) He makes similar claims of race and color discrimination and retaliation by Moore, Thomas, Brown, and Gatrone

---

[1]*Saleh, et al., v. Virginia State Univ., et al.*, 3:97CV460 (E.D.Va. 1997) (J. Payne); *Cobbs v. Virginia State Univ., et al.*, 3:02CV222 (E.D.Va. 2002) (J. Williams).

under 42 U.S.C. § 1983.  (Counts II, IV, VI)  A claim that Moore, Thomas, Brown, and Gatrone violated Stronach's First and Fourteenth Amendment right to Academic Freedom was dismissed by Order dated January 15, 2008.  (Count VII)  Finally, the Amended Complaint contains two state law claims that Gatrone and Moore tortuously interfered with Stronach's employment contract and business expectancy.  (Counts VIII and IX)

## II.  Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).  "The disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (internal citations omitted).  "Thus, if the evidence is 'merely colorable' or 'not significantly probative,' it may not be adequate to oppose entry of summary judgment." *Id.*

## III. Analysis

The Court turns first to the Title VII claims contained in Counts I, III, and V of Stronach's Amended Complaint.  Stronach alleges that VSU was impermissibly

3

motivated by his race, his color, and his prior assistance in the *Cobbs* and *Saleh* cases when it facilitated the cancellation of his Air Force grant, overloaded him with teaching hours, sided with the student in a grading dispute, shut off his university email, and ultimately forced him into a premature retirement. Stronach claims a variety of damages including lost pay, pain and suffering, mental anguish, and humiliation.

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race [or] color." 42 U.S.C. § 2000e-2(a)(1). It is likewise "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a).

"Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional . . . discrimination through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). The most common method is for a plaintiff to take advantage of the well-known *McDonnell Douglass* framework, "under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 284.; *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). This case, however, is a direct

4

evidence case in which Stronach attempts to "establish a claim of discrimination by demonstrating through direct or circumstantial evidence that [race, color, or retaliation] . . . motivated the employer's adverse employment decision." *Hill*, 354 F.3d at 284.

Stronach must therefore show that VSU officials were motivated, at least in part, by his race, his color, or his prior assistance in the *Saleh* and *Cobbs* cases, when the allegedly adverse actions listed in the Amended Complaint were taken against him. 42 U.S.C. § 2000e-2(m). While impermissible motivation need only be one factor in prompting the adverse actions taken by VSU, Stronach must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision[s]." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995).

Stronach has populated the record with several statements and episodes that he argues are evidence of unlawful discrimination motivating the university's actions. In 2002, President Moore reportedly told Stronach "to get out of my face" as Stronach approached him with news of a grant project. In 2003, Moore told Stronach and Cobbs that they could not attend a luncheon with the Board of Visitors despite receiving an invitation and asked them to eat in an adjoining room.

In April 2004, Provost Thomas was an addressee on an email exchange between Stronach and fellow professor Earl McClenney in which they discussed, with somewhat veiled references, VSU's treatment of Cobbs. Thomas replied that the emails were

5

"rude," "unwanted," and in violation of state and university policies regarding the use of email. Later in the same month, Thomas received an email from the National Association of Scholars ("NAS"), a group Stronach was actively involved in. Thomas believed Stronach was responsible for the email and forwarded it to him saying he was once again in violation of email policies. Thomas asked that Stronach "[p]lease stop and desist in sending me these unwanted emails!!" Regarding the NAS, Thomas heavily criticized the organization and, in another instance, he told Stronach the local chapter was "horrible."

Later in 2005, Stronach describes walking with Cobbs on campus and seeing Thomas ahead. As they approached him, Thomas abruptly turned away from the two professors and walked in a different direction. Stronach claims that in the Fall of 2005, Thomas told Stronach he better "hurry-up and retire" or Thomas would make his life miserable. Finally, Stronach has submitted evidence that there was an argument between Stronach and Thomas prior to Thomas's deposition in this matter. The court reporter present heard Thomas call Stronach "a fat fool," an "asshole," and a "fat stupid son-of-a-bitch." Thomas also called Stronach's research "garbage" and vowed to fight Stronach's lawsuit to the "nth degree."

Other VSU administrators hold similarly harsh opinions of Stronach according to Plaintiff's evidence. Dr. Gatrone, Chairman of the Department of Chemistry and Physics, told Saleh in 2003 that Stronach's research work was the "equivalent of money laundering," only benefitted three professors at VSU associated with the research, and

6

said he was "not going to allow this to continue."

Stronach claims that the foregoing statements and actions by VSU officials constitute abundant evidence of a particularly acute animus towards him. The Court agrees that an animus is apparent. The record makes clear that high-ranking university officials, such as Thomas and Moore, do not think fondly of Stronach. The evidence also indicates that university officials do not value his research and that they were anxious to see him depart the faculty. There is no law, however, that prevents superiors from hastening the departure of an employee because they do not value his work, or quite frankly, because they simply do not like him.

While it may be proof that university administrators dislike Stronach and have never been hesitant to express their dislike, the evidence Stronach points to does not support an inference that unlawful discrimination or retaliation was at the root of this animus or the resulting employment actions. Stronach must present direct or circumstantial evidence showing that his race, color, or protected activity "actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Hill*, 354 F.3d at 286. The statements and actions submitted by Stronach are not probative of discriminatory or retaliatory intent. They indicate hostility but not impermissible motive underlying the hostility. None of the episodes Stronach has presented, even when weighed collectively, would be sufficient "for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, [or Stronach's assistance

7

to Saleh and Cobbs] was a motivating factor for any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003).

Stronach's theory is that the largely African-American administration led by Moore was intent on ridding the VSU faculty of white and foreign-born professors and, as a white professor, he was one of the casualties. Stronach has submitted evidence of remarks by VSU administrators that evince a general discriminatory attitude. Stronach, for instance, offers a claim by Cobbs that Moore said to him in 1994 "there were too many foreigners in the Department of Life Sciences and that he intended to do something about it." This statement does not get Plaintiff any closer to averting summary judgment. Stronach is neither a foreigner nor a faculty member in the Department of Life Sciences which makes the statement of little import.

Of greater significance is the timing of the statement. The statement by Moore was made at least ten years before the actions at issue in this case were taken by VSU officials against Stronach. Temporal proximity between the evidence of discriminatory intent and the allegedly adverse employment actions must be "very close" to establish causation. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). When as little as three months elapse between the event that is proffered as evidence of discriminatory intent and an allegedly adverse employment action, the Supreme Court has considered the temporal proximity of the two events to be insufficient to establish a *prima facie* case of illegal discrimination. *Id.* The analysis is equally applicable in determining causation in

8

a direct evidence case.

The same caveats apply to a comment by Professor Florence Farley which Stronach puts heavy emphasis on in his briefs. Farley, then Chairman of the Department of Psychology, called a fellow professor "African trash." Stronach is not African so there is no reason to believe this statement is evidence that unlawful discrimination motivated VSU officials in their actions against him. Stronach has also never served in the Department of Psychology as Farley's subordinate. Further, the statement was made prior to 1999 which significantly predates the allegedly adverse actions that Stronach suffered.

The only relevant evidence put forward by Stronach is a comment said to have been made by Thomas in 2003 or 2004 to the effect of "this school is too white." The comment comes from the declaration of Lera Johnson, a former professor at VSU. She states that Dr. Moadab told her and other faculty members in the School of Engineering, Science, and Technology that Thomas said "this school is too white." The context of the statement is absent from the record. Johnson merely says she was told by Moadab that Thomas had made the statement at a meeting . It is not known whether Thomas was referring to the student body or to the faculty. Given the absence of context and the second-hand nature of the evidence, Thomas could have been discussing any number of subjects other than voicing his intent to illegally rid VSU of white professors as Stronach contends. Thomas could have been, for instance, espousing his view that the school needed to recruit more minority faculty or students. To infer from the quoted excerpt of

9

the statement that Thomas fostered a general desire to rid the faculty of white professors would be gross speculation.

Stronach believes that these statements coupled with the described actions of school administrators provide ample evidence of pervasive institutional intent to discriminate against white professors. The Court cannot accept this conclusion. Stronach has chosen to proceed by putting forward direct or circumstantial evidence of discriminatory intent purposefully underlying the actions that VSU has taken *against him*. The Farley and Moore statements were made long before the alleged discriminatory and retaliatory acts against Stronach. Thomas's statement is vague and has no link to Stronach. It is not sufficient by itself to create a material issue of triable fact regarding the motives of VSU administrators with respect to employment actions specifically taken against Stronach. *See Thompson,* 57 F.3d at 1323 ("[If] the evidence is 'merely colorable' or 'not significantly probative,' it may not be adequate to oppose entry of summary judgment.").

Not only has Stronach failed to forecast sufficient evidence regarding the motives behind the employment actions taken against him, he has not shown that most of these actions were actually adverse. "Regardless of the route a plaintiff follows in proving a Title VII action, . . . the existence of some adverse employment action is required." *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004). Stronach may only seek redress for actions taken against him by his employer that were both legally

adverse and motivated by unlawful discrimination.

In Title VII claims based on color and race, "[a]n adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks omitted). In retaliation cases, a plaintiff needs to prove "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66-67 (2006) (citations and internal quotation marks omitted).

Stronach has indicated four principle employment actions taken by VSU which he says forced him to retire. The actions are: 1) VSU's cancellation of Stronach's $300,000.00 Air Force grant; 2) increasing his teaching load; 3) siding with a student in a grading dispute; and 4) shutting-off his email while Stronach was still employed at VSU. Stronach sees discrimination and retaliation in each of these acts, but the record reflects very different facts than those initially alleged by Stronach.

Stronach has inaccurately characterized the termination of the Air Force grant project that is the centerpiece of the alleged scheme to force his retirement. In 2005, the Air Force awarded Stronach a $300,000 grant to research Micromagnetics. The grant provided that Stronach would work with David Noakes, a temporary contract professor, and Anthony Arrott, a research professor, but the grant did not provide full salaries to

11

Noakes and Arrott. Specifically, the Air Force budget provided just less than two months salary for Noakes and three months salary for Arrott. VSU would be responsible for paying their salaries during the rest of the year.

When a more permanent position in the department became available, Arrott and Stronach lobbied hard for Noakes to get the job but he was not qualified for the full-time position. Their lobbying effort, according to Gatrone and one of the job applicants, involved dissuading qualified candidates from pursuing the position by relaying stories of past discrimination against professors and subsequent lawsuits. This portrayal of VSU by Stronach and Arrott was primarily responsible for one applicant, Danielle Morel, not accepting the position. She says she was "shell-shocked" by her encounter with Stronach and Arrott. When Gatrone asked Professor Victor Vilchiz to supervise any future interaction between Stronach, Arrott, and applicants, Arrott verbally attacked Vilchiz calling him an "errand boy" for Gatrone, his "master."

Arrott apologized to Gatrone for his belligerence and interference with the hiring process, but VSU terminated his contract immediately. With Arrott gone and Noakes not likely to be given a full-time position, Stronach informed the Air Force that he would not be able to conduct the research. Stronach did this himself even though he could have attempted to hire new researchers to assist him. No other member of the VSU faculty took part in terminating the grant besides Stronach. He perceives the termination of Arrott as part of a larger plan to have the grant cancelled in order to facilitate his

12

retirement, but no evidence regarding the grant project supports his conclusion. The only evidence on the record shows that Arrott was fired because he interfered with the department's hiring process and treated a fellow professor with severe disrespect. The termination of the Air Force grant project cannot be construed as an adverse employment action taken by VSU against Stronach. It was instead the result of Stronach's voluntary decision to cancel the project after VSU terminated Arrott for a multitude of legitimate reasons.

Stronach has also mischaracterized the facts regarding the termination of his email account which he says occurred while he was still employed at VSU. He states in his deposition that his VSU email account was terminated in July 2006 as an act of retaliation by Thomas, but Stronach's retirement was effective May 15, 2006. Stronach states that he should have been given until the end of the summer to download mail and "get stuff together." The Court does not believe terminating Stronach's work email account *after* he voluntarily left the university can be construed as an adverse employment action or an act of retaliation that might afford relief under Title VII.

The grading dispute Stronach cites is also not a cognizable employment action under Title VII. The dispute centered around a student believing he had earned a grade of "A" from Stronach on two exams that were recorded as much lower marks. When the student and his father contacted Stronach to dispute the grades, Stronach became angry and hung up on them. The student and his father then contacted Thomas. The provost

13

asked Gatrone to investigate. Gatrone gathered information from the student and from Stronach, and ultimately sided with the student. Thomas then changed the grade Stronach had awarded in accordance with VSU policies and procedures. The event may have been embarrassing or even infuriating for Stronach, but the Court concludes it did not alter the conditions of his employment. Further, it was not an action by VSU that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" in the future. *White*, 548 U.S. at 66-67.

Stronach claims two additional adverse employment actions by VSU. He claims that increasing his teaching load after the Air Force grant was terminated was an adverse employment action and that he was forced into premature retirement under circumstances that would constitute a constructive discharge. Defendants counter that teaching loads fluctuate based on a professor's other responsibilities and the number of students interested in taking a given class during a given semester. They state that Stronach was assigned nine hours for the Fall 2005 semester and six hours for the Spring 2006 semester, but point out that the VSU Faculty Handbook prescribes a twelve-hour semester as the normal teaching load for professors. Regarding constructive discharge, VSU responds that Stronach voluntarily announced his retirement at a faculty meeting in response to advice received from his cardiologist. While a change in teaching hours and constructive discharge are both employment actions which could justify relief under the discrimination or retaliation provisions of Title VII, the law still requires proof of causal

14

connection. Even assuming these were adverse actions, Stronach has not put forward any probative evidence of discriminatory or retaliatory intent linked to the change in his teaching load or his decision to retire. Any conclusion to the contrary would require the jury to engage in impermissible speculation.

In summary, the majority of the actions listed in Counts I, III, and IV were not adverse employment actions under Title VII and Stronach has failed to put forward colorable evidence of discriminatory or retaliatory motives on the part of Defendants as to any employment action listed in the Amended Complaint. VSU will therefore be awarded summary judgment on the Title VII claims listed in Counts I, III, and V.

The Court turns next to the claims listed in Counts II, IV, and VI. Stronach has styled these counts as claims under 42 U.S.C. § 1983 for race discrimination, color discrimination, and retaliation against Moore, Thomas, Gatrone, and Brown in their individual capacity. He has restated the claims in these counts as § 1983 claims against the individual defendants because Title VII provides for a cause of action only against VSU. *See Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (holding that "Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'"). The actions that allegedly constitute discrimination and/or retaliation in these counts are the same as in the Title VII counts: the termination of the Air Force grant, the grading dispute, the termination of Stronach's email account, and the increase in his course load which collectively forced Stronach into a premature retirement.

15

The claims of race and color discrimination contained in Counts II and IV are essentially the same as Stronach raised in Counts I and III under Title VII. In evaluating Defendants' summary judgment motion, the Court utilizes the same analysis for discrimination claims brought pursuant to § 1983 as it does for Title VII claims. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). Accordingly, Counts II and IV cannot survive summary judgment for reasons identical to those discussed with regard to Stronach's Title VII claims. Stronach has not provided sufficient evidence indicating that the individual defendants were improperly motivated by his race or color in taking any employment action against him.

The retaliation claim in Count VI requires the Court to employ a slightly different test. In Count VI, Stronach alleges that he exercised his First Amendment right to free speech when he testified and spoke out on behalf of Saleh and Cobbs, and that the actions taken against him by the individual defendants constitute illegal retaliation in violation of § 1983. *Love-Lane*, 355 F.3d at 776 ("The government may not retaliate against a public employee who exercises her First Amendment right to speak out on a matter of public concern."); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968).

A retaliatory employment action violates a public employee's right to free speech when a three-part test is satisfied:

> First, the speech must relate to a matter of public concern. Second, the employee's interest in First Amendment expression must outweigh the employer's interest in efficient operation of the workplace. Third, there must be a causal relationship between the protected speech and the retaliatory employment action;

16

specifically, the protected speech must be a substantial factor in the decision to take the allegedly retaliatory action. The first two elements involve questions of law. The third element, causation, can be decided on summary judgment only in those instances when there are no causal facts in dispute.

*Love-Lane*, 355 F.3d at 776.

Assuming without deciding that Stronach has met the first two elements, Defendants are nonetheless deserving of summary judgment because no causal link has been established between Stronach's assistance to Saleh and Cobbs, and the employment actions taken by the individual Defendants. Regardless of the way Stronach phrases his claims, he must put forward sufficient evidence of a retaliatory intent to survive Defendants' challenge and he has not. Defendants are entitled to summary judgment on the retaliation claim contained in Count VI.

The balance of Stronach's Amended Complaint consists of claims that Gatrone (Count VIII) and Thomas (Count IX) violated Virginia law by tortiously interfering with contract. Stronach alleges that he had "a valid contractual relationship and business expectancy with respect to his employment with VSU" which was interfered with by Thomas and Gatrone. As Defendants aptly note in their brief, however, an entity cannot intentionally interfere with its own contract. *See Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985). Gatrone and Thomas, as agents of VSU, are not able as a matter of law to interfere with VSU's contract. *Fox v. Deese*, 234 Va. 412, 427, 362 S.E.2d 699, 708 (1987). Therefore, if Thomas and Gatrone were acting within the scope

17

of their employment for VSU when they took the subject actions affecting Stronach's employment, then summary judgment is appropriate.

Thomas as VSU Provost and Gatrone as a department chair are given broad responsibility in the VSU Faculty Handbook to allocate university resources, assign teaching loads, hire and fire faculty, and renew or modify faculty employment contracts. The role these two Defendants played in assigning Stronach additional teaching hours, terminating his email, adjudicating the grade dispute, and terminating Arnott were well within their assigned duties as VSU administrators. At all times, Thomas and Gatrone appear to have been acting within the scope of their employment in their dealings with Stronach.

Further, to prevail on a claim for tortious interference with contract Stronach must show "intentional interference inducing or causing a breach or termination of the relationship or expectancy." *Duggin v. Adams*, 234 Va. 221, 226, 362 S.E.2d 744, 748 (1987). Assuming that Gatrone and Thomas are capable of incurring liability under Virginia law, Stronach has not put forward sufficient evidence showing intentional interference. Defendants will be awarded summary judgment on Counts VIII and IX.

## IV.  Conclusion

Stronach "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The record in this case is heavy on speculation but decidedly light on direct

18

evidence "upon which a jury could properly proceed to find a verdict for" Stronach.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  For these reasons,

Defendants' motion is granted.  Summary judgment was awarded by Order dated May 12,

2008.

 

                                                 /s/

                                     Henry E. Hudson
                                     United States District Judge

ENTERED this 23rd day of May, 2008
Richmond, VA

19